BENJAMIN F. BROWN & WIFE v. JOHN A. BROWN, EXECUTOR OF
LOWELL BROWN.

Under the law of June, 1845, ch. 4074, a party will not ordinarily be allowed to testify where the adverse party is an executor or administrator, unless the latter elect to testify.

But in respect to transactions and admissions arising since the decease of the testator or intestate, it would be a proper exercise of discretion to allow the living party to testify.

THIS is a bill in equity by Benjamin F. Brown and his wife against John A. Brown, executor of Lowell Brown, to recover the balance of a fund alleged to have been held in trust by said Lowell Brown for the wife of said Benjamin.

The case was heard upon bill, answers and proofs, and the defendant

objected to the depositions of the two plaintiffs, upon the ground that the other party was an executor.

The other questions were questions of fact which it is unnecessary to state.

*Towle*, for plaintiff.

*J. J. Bell*, for defendant.

BELLOWS, J. The first question to be disposed of is, whether the testimony of the plaintiffs shall be received, the adverse party being an executor. By the law of June, 1865, chapter 4074, the court may, in its discretion, permit the parties to testify in such case, only where it is clearly made to appear that actual injustice or fraud will otherwise be done ; and it is now well settled that if the transaction about which the testimony of the party is sought, was directly between the deceased and the living party, and to which the deceased might have testified if living, the surviving party will not ordinarily be allowed to testify. *Moore* v. *Taylor*, 44 N. H. 374 ; *Chandler* v. *Davis*, Strafford Co., December, 1867 ; *Harvey* v. *Hilliard*, Coos Co., January, 1858.

In the case before us, so far as respects the transactions and admissions arising before the decease of the testator, for aught that appears he could have testified about them, if now living, and therefore, as nothing appears to take the case out of the general rule, the plaintiffs must be excluded, as the executor has not elected to testify.

In respect to matters arising since the decease of Lowell Brown, of which, of course, he could have no knowledge, the principle established by the cases cited would make it a proper exercise of discretion to allow the plaintiffs to testify, unless incompetent upon other grounds than the fact that the defendant is an executor.

The defendant has offered evidence of the acts, declarations and admissions of the plaintiffs on various occasions since the death of the testator, and we think that this makes a case where under ordinary circumstances injustice might be apprehended within the meaning of the statute, if the testimony of the plaintiffs was excluded, inasmuch as it is the policy of the statute to make a party competent to testify where the other party stands upon equal footing, as would be the case here.

Upon the evidence, the court found the allegations in the bill not sustained, but granted leave to amend the bill upon terms.

## TOWLE *v.* BLAKE.

In trespass for injuries to the person, generally, the complaints and representations of the suffering party, indicative of present pain, whether made before or after the suit, and not as a narration of past suffering, but as exhibiting the natural symptoms and effects of the injury, may be received as original evidence, whether made to a medical attendant or other person not an expert.

In this class of cases, damages may be recovered for the direct, natural and probable effects of the injury as proved, up to the time of the trial, and generally afterwards. In torts involving circumstances of aggravation, and indicating malice, insult, oppression, wanton or wilful violence, the jury may be instructed to give *vindictive* damages in compensation for the injuries received. The criminal prosecution is no bar to the civil suit at one and the same time.

TRESPASS for an assault and battery, charged to have been committed on the first day of June, 1863, on which day the suit was brought. The plaintiff himself testified on the trial, and introduced a physician who also testified to the extent of the injuries to the person of the plaintiff; and to show the pain and suffering experienced from those injuries both before and after the suit was commenced, the plaintiff was permitted, against the defendant's exceptions, to prove expressions and complaints of present pain and suffering at such times, both before and after the suit, and both to physicians and others, who were not experts. Among the expressions of pain and suffering, one French testified that plaintiff said he had a pain in his side. Before stating this, defendant objected to any expressions of pain and suffering after the suit, and to a person not a physician. This being after the suit, and the witness not an expert, the court ruled that an expression of present pain and suffering was admissible, though after suit, and to a person not a physician; and the witness thereupon without further or other exception testified as above; and similar statements were made by others, among them Charles W. Rogers, who, under the same circumstances, testified that plaintiff said his side was lame. No objection was made in any of the cases that these statements went beyond expressions of present pain and suffering.

The defendant, in a brief statement filed with the general issue, justified his assault upon the ground that it was in necessary self-defence against the prior assault of the plaintiff upon the defendant; and he offered evidence tending to prove such prior assault; but, on this point, the evidence was conflicting. The court instructed the jury that if the plaintiff made the first assault the defendant might lawfully repel it by using so much force as was necessary for that purpose, but if he used more, he would be liable for the injuries caused by the excess; and if the plaintiff was found not to have assaulted the defendant, the latter would be liable for all the damages to the plaintiff that were the natural and necessary consequences of the violence used by him, including both bodily and mental pain and suffering, and that to this the jury were at liberty to add a further sum by way of exemplary damages, such as the defendant ought to pay and the plaintiff to receive. To these instructions the defendant excepted, and the jury having returned a verdict for the plaintiff for damages assessed at $300, the defendant moved to set aside the verdict for supposed errors in the rulings and instructions aforesaid, and also because the damages were excessive.

On this point the plaintiff testified that he received severe blows of defendant's fists about the eye, the temples, and on various parts of the head, causing swelling and discoloration, which continued for some weeks; that he also was injured in his chest and side and thought his ribs were injured, and that he was unable to do his ordinary labor about his livery stable for more than two months; and that for these injuries he had several times consulted a physician who testified to the character of the injuries. Upon the other hand, the defendant testified to the use of provoking language by the plaintiff, and also to a previous assault by him, and that he struck only two blows which were in the face, and with the open hand.

At the hearing the parties may read the notes of the testimony taken by the judge, with the deposition of W. F. Towle.

Ordered that the questions of law arising in this case be reserved for the determination of the whole court at its next law term for this county.

*Frink & Towle,* for plaintiff.

I. The admission of complaints of suffering and pain, in evidence, did not go further than is justified by the rule. 1 Green. on Ev. sec. 102; 1 Phil. on Ev. sec. 191; *Perkins* v. *Railroad,* 44 N. H. 225; *Howe* v. *Plainfield,* 41 N. H. 135; *Kent* v. *Lincoln,* 22 Vt. 591.

The complaint of the pain in the side, to French and others, was uttered in the language which would be the most natural expression of an existing malady, or of present suffering.

The true distinction seems to be that the expression, complaint or exclamation must be the result of a present pain, and not a narration of one's condition, for the information of a listener.

Inasmuch as the presence of pain may as well find its expression in the language used to French, as in any groan or exclamation, there is nothing in the case which shows such testimony should have been rejected, even under the refinement of the case, cited by the defendant, of *Bacon* v. *Charleston.*

2. The terms used in our own reports, and in the text books, are broader than the rule in Cushing would allow, and include "representations" made by the sick or injured person, of his sufferings.

3. But whatever may have been the character of the evidence, no exception can be taken to the terms laid down by the presiding justice, under which it was admitted.

They were not so broad as the case in Massachusetts, even, would justify; for in his ruling the plaintiff was limited to *expressions* of pain, while that case extends the evidence to *complaints and exclamations,* as well as *expressions.*

Under this very limited rule, the evidence was introduced without objection. If the counsel for the defendant conceived that the evidence was inadmissible, under the ruling of the court, it was their duty to have called the attention of the court to its inadmissibility at the time. *Boyce* v. *Railroad,* 43 N. H. 628; *State* v. *Rye,* 35 N. H. 368; *Lee* v. *Lamprey,* 43 N. H. 13.

II. 1. The terms used by the court, in directing the jury in their assessment of the general or actual damages, are those of the books. Green. on Ev. vol. 2, secs. 267, 268 ; Sedgwick on Dam. 482–9 ; *Martin* v. *Warren*, 7 Conn. 293 ; and if they needed any enlargement the counsel should at the time have so requested. There can be no affirmative objection to them.

2. After the jury have given adequate compensation for the whole injury, the law authorized them to assess a further sum for an example or punishment where there are circumstances of insult, aggravation or malice to support it. *Knight* v. *Foster*, 39 N. H. 576 ; *Hopkins* v. *Railroad*, 36 N. H. 9 ; *Perkins* v. *Towle*, 43 N. H. 220 ; *Whipple* v. *Walpole*, 10 N. H. 130 ; *Phil. Wil. & Bal. Railroad* v. *Quigly*, 21 How. 202 ; *Nagle* v. *Mullison*, 34 Penn. 48 ; *Cook* v. *Ellis*, 6 Hill 466 ; *Roberts* v. *Mason*, 10 Ohio 277 ; Campbell's Lives of Lord Chancellors 207 ; *Doe* v. *Filliter*, 11 M. & W. 625 ; *Day* v. *Woodworth*, 13 How. 363 ; Sedgwick on Damages ; Parsons on Cont. vol. 3, 172 ; Graham & Waterman on New Trials, vol. 3, p. 1123 ; 3 Johns. Rep. 56.

3. The rule adopted, in the 4th volume of Cushing's Reports, in regard to the recovery of exemplary damages in cases punishable by indictment, is not sustained by the weight of authority. *Cook* v. *Ellis*, vol. 6, Hill, 466 ; *Roberts* v. *Mason*, 10 Ohio 277 ; *Cole* v. *Tucker*, 6 Texas, 266 ; U. S. D. vol. 13, p. 166.

The case of *Cook* v. *Ellis* is directly in point, and the court of which Nelson was the chief justice, considered the whole subject with much more care than it was considered in the case cited in Cushing's Reports, and the law, as there laid down, has been adopted by our American courts, so far as we can discover upon an examination of the reports and digests.

The only objection which can be urged against this recovery of damages, is that of a double punishment. This can be obviated in every imaginable case.

If the defendant in the civil suit has already been punished upon indictment, then this punishment may be evidence in his behalf, in reduction of damages. If he is under indictment, the proceedings in the criminal process can be stayed until the civil suit is at an end, and then the court will protect the accused by a nominal punishment, and the same mitigation of punishment can be resorted to in cases of subsequent indictment. The case at bar does not show any previous punishment upon indictment, or any indictment pending.

But this theory goes entirely upon the ground, that the court will thus interfere to protect one who has committed a breach of the law, from the ordinary consequence of his wrongful acts.

The policy which would lead to such interference in behalf of a criminal, might be questioned and would be in seeming contravention of all the authorities which include assault and battery, libel, &c., among the class of cases in which exemplary damages may be awarded.

III. But one action can ordinarily be maintained for injuries, result-

ing from the same trespass, and but one bill of costs recovered, and a party is not obliged to await the full development of his injuries before suit

The proof may "extend to all facts which occur and grow out of the injury up to the day of the verdict." Green. on Ev. vol. 2, p. 221, sec. 268; *Spoon* v. *Clark*, 1 Conn. 137; *Curtis* v. *Roch. & Syr.* R. R., 20 Barb. 282; *Tuttle* v. *Jenkins*, 3 Green's R. 302, cited U. S. D., vol. 4, p. 400; *Hopkins* v. *At. & St. L. R. R.*, 36 N. H. 9.

IV.　A new trial will not be granted in a tort, on the ground of excessive damages, where there is any evidence to support the verdict, unless it is manifest the jury were swayed by partiality, passion or corruption. *Smith* v. *Woodfusee*, 1 C. B. (N. S.) 660; *Creed* v. *Fisher*, 26 Eng. Law & Eq. 384; *Badger* v. *Briggs*, 8 Pick. 122; *Treaner* v. *Donahoe*, 9 Cush. 228. The court will find this subject treated at length, and the cases collated in Graham & Waterman on New Trials, vol. 3, p. 1131—1159.

*Small & Wood*, for defendant.

NESMITH, J.　This was trespass, wherein plaintiff claimed damages for injuries to his person. The verdict of the jury having been rendered for the plaintiff, the defendant alleges sundry exceptions to the rulings of the judge upon the trial, and thereupon asks that said verdict may be set aside :

1.　Because the plaintiff was permitted to prove expressions and complaints of present pain and suffering, both before and after the suit, to physicians, and others who were not shown to be experts.

Generally, but one action can be brought to recover damages resulting from injuries from one trespass to the person; and a party is not obliged to await the full result of his injuries before the commencement of his suit, and the proof may extend to all facts which may occur or or necessarily grow out of the injury up to the time of the trial, and sometimes prospectively beyond the time of the trial.　2 Greenleaf's Evidence, secs. 267 and 268, A. & B. p. 312, and authorities in note. *Hopkins* v. *At. & St. L. Railroad*, 36 N. H. 9.

In *Shaw* v. *Railroad*, 8 Gray, 80, the learned counsel contended for the application of this rule. It was a case where Mrs. Shaw was very severely injured, and the case was warmly contested. Three several verdicts were rendered. The first being for $15,000; the second, $18,000; the third, upon which judgment was rendered for plaintiff, was for $22,500. At the third and last trial, the plaintiff had then suffered for seven years since the injury was sustained. And the learned counsel, Messrs. Durant & Choate, contended for full compensation in money, *for every pain of body or mind*, which she had been compelled to endure *hitherto* and which she must suffer *in future*.

The judgment of the court appears to have sanctioned this principle. In *Ransom* v. *New York & Erie Railroad*, 1 E. P. Smith, 415, the

court charged the jury, that, in addition to necessary expenses incurred for nursing and medical aid, for being deprived of the use of limbs, whether total or partial, they might, in addition to the pain and losses already incurred and suffered, take into consideration such as would naturally and probably *thereafter result* to the plaintiff as the direct consequences of the injury. The latter position was excepted to by *Kernan*, the learned counsel for defendant. And in that case the cases in England and in this country, are examined at length, and the ruling of the court at the trial was sustained. In that case, the injury received was imputed to the *culpably negligent acts* of the defendants, and proof as to the natural and probable effects of the injury up to the time of the trial and *afterwards*, was adjudged legal and properly received, and for like reasons, we think the same rule should be applied here.

2. The complaints or representations of the plaintiff, indicative of present suffering or pain, whether made before or after the suit, and not as a narration of past suffering, but as exhibiting the true nature, symptoms and effects of the injury or malady under which the party is then laboring, may be received as original evidence. If made to a medical attendant, they are of greater weight; but if made to any other person, they are not on that account to be rejected as evidence. 1 Greenleaf's Ev. sec. 101; 1 Phillips' Ev. 191; *Howe* v. *Plainfield*, 41 N. H. 145; *Perkins* v. *Railroad*, 44 N. H. 223. Hence, the complaints of plaintiff to French and Rogers were properly received in evidence, and it was for the jury to determine, whether they were honest or counterfeit.

3. We see no cause of objection to the terms or language used by the court in their direction to the jury, as to what constitutes self-defence, and the liability accruing from any excess of violence by the defendant, or what was the rule in case plaintiff did not make the first assault upon the defendants and the consequent measure of damages for the violence and injury inflicted by the defendant, including the suffering for both bodily and mental pain. The instruction of the court on this part of the case, seems to accord with the rules laid down in our elementary books, as before quoted, and are approved in *Hopkins* v. *Railroad, ante;* and so also, in torts involving circumstances of aggravation, showing malice, insult, oppression, wanton or wilful violence, courts are at liberty to instruct a jury that they may find exemplary damages, such as plaintiff ought to have and the defendant ought to pay. Whether the case before us appropriately belonged to this class of trespasses, was for the court at the trial, in the exercise of a wise discrimination, to determine. Where the conduct of the defendant clearly evinces motives and acts of a wanton or of an excessive, violent, malicious or evil nature, we think the jury may give, as compensatory damages, what are usually denominated vindictive damages. The great weight of authority, under the practice, as administered in England, and in most of the States in this country, seems to be in support of this doctrine. Professor Greenleaf, in his discussion on this subject, undertakes to prescribe limitations upon this doctrine. Sedgwick,

in his book on Damages, devotes a chapter to the consideration of the same subject. *Vide* ch. 18, 477, and authorities in note, Sedgwick on Damages. There is an article which originally appeared in the Law Reporter of April, 1847, supposed to have been written by the late Judge Metcalf of Massachusetts. The same article makes an appendix to Mr. Sedgwick's book on Damages. The views of Metcalf are very similar to Prof. Greenleaf's. In the seventh edition of Vol. 1, of Chancellor Kent's Com. 618, sec. 618, Kent remarks upon this subject that the object of the review aforesaid was to show, that, in matters of tort, the cases where exemplary damages were given, on a strict examination and construction of the language of them, amount to authorities for going beyond compensatory damages. "But," continues he, "on the consideration of the whole subject, it appears to me that the conclusions in Mr. Sedgwick's treatise are well warranted by the decisions, and that the attempt to exclude all consideration of the malice and wickedness, and wantonness of the tort, in estimating a proper compensation for the victim, is impracticable, visionary, and repugnant to the fine feelings of our social sympathy and humanity." Many of the cases in support of this doctrine are quoted at length in the aforesaid chapter of Sedgwick, and in the brief of the counsel for plaintiff in this case. And the rule is also laid down, without qualification, that we are not to regard the possible punishment of the defendant by indictment and conviction by a State process. The criminal suit is no bar to the civil, at one and the same time. *Jones* v. *Clay*, 1 Bosanquet & P. 191; *Jacks* v. *Bill*, 3 Carr. & Payne, 316; *Cadily* v. *Barlow*, 1 Man. & Ryl. 275; *Cook* v. *Ellis*, 6 Hill, 466; *Roberts* v. *Mason*, 10 Ohio, 277. In order to set aside the verdict in this case, the defendant must show not only that the damages were excessive, but that the excess was so great that the court, for this reason, must infer the jury were influenced by improper motives of partiality, passion or corruption. *Rand* v. *Redington*, 13 N. H. 76; *Treaner* v. *Donahoe*, 9 Cush. 228.

We have not sufficient grounds set forth before us to justify us in setting aside this verdict. There must be

*Judgment on the verdict.*